EL PUEBLO DE PUERTO RICO en interés del menor L.V.C., demandante y peticionario.

*Número:* O-79-152 *Resuelto:* 25 de junio de 1980

*Heriberto Febus Fernardini* y *Ramón Febus Fernardini,* abogados del menor L.V.C. y su padre; *Héctor A. Colón Cruz, Procurador General,* y *Federico Cedó Alzamora, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Ante el Tribunal Superior, Sala de Menores de Ponce, se formuló querella contra un joven de diez y ocho años de edad por alegadas faltas cometidas antes de haber cumplido dicha edad. ¿Tenía autoridad la Sala de Menores para entender en el caso bajo el procedimiento especial de la Ley Núm. 97 de 23 de junio de 1955, relativa a menores? Se imputó al menor conducir un automóvil y causar un accidente en que se lesionó una persona, hechos punibles como delitos menos graves bajo la Ley de Vehículos y Tránsito. La querella se presentó más de un año después de ocurridos dichos hechos. ¿Estaba prescrita la acción? ¿Se violó el derecho a juicio rápido? El abogado de la persona lesionada solicitó y obtuvo autorización para intervenir en el procedimiento en calidad de *amicus curiae*. ¿Actuó correctamente el Tribunal? Tales son las cuestiones que aquí se plantean y que pasamos a considerar.

## I. *Los Hechos*

El menor en cuyo interés se instó la acción a que aquí nos referimos nació el 21 de noviembre de 1959. Se le formuló querella ante el Tribunal Superior, Sala de Menores de Ponce, el 16 de octubre de 1978, cuando le faltaban dos semanas para cumplir diez y nueve años. Se alegó que el 2 de junio de 1977 —tenía entonces diez y siete años y seis meses de edad— conducía un automóvil en violación de la Ley de Vehículos y Tránsito porque, aunque tenía licencia de aprendizaje, no iba acompañado de un conductor autorizado, y, porque al tratar de rebasar a otro vehículo ocasionó un accidente en que resultó lesionada su conductora. Se le imputó violar las Secs. 3-105(d) y 5-201 de la mencionada ley, 9 L.P.R.A. secs. 655(d) y 871, respectivamente. Ambas infracciones se castigan, si cometidas por un adulto, como delitos menos graves.[1]

_____

[1] La Sec. 3-105(d), 9 L.P.R.A. sec. 655(d), dispone:

"(d) Toda persona a quien se le conceda una licencia de aprendizaje

El 25 de octubre de 1978 se celebró una vista investigativa ante la juez Hon. Edith Pardo de Vázquez. El abogado Lcdo. Leopoldo Bonilla Vélez, representante de la conductora que resultó lesionada en el accidente, pidió verbalmente que se le permitiera intervenir en los procedimientos como *amicus curiae*. A ello se opuso el abogado del menor, Lcdo. Ramón E. Febus Bernardini, y la juez Pardo de Vázquez denegó la petición. Posteriormente, mediante escrito de fecha 7 de diciembre de 1978, el abogado Bonilla Vélez reprodujo su solicitud de "nombramiento de *amicus curiae*". Expuso en el primer párrafo de su petición:

1—Que en uso de su discreción [*sic*] este Honorable Tribunal le permita la intervención en esta querella debido a las circunstancias técnicas y de Ley que ella envuelve y al *derecho constitucional a salvaguardar la propiedad y la vida de las partes perjudicadas.* (Énfasis nuestro.)

___

podrá conducir un vehículo de motor por las vías públicas, sujeto a la reglamentación que a tal efecto estableciere el Secretario y estará obligada a tener a su lado inmediato y contiguo, cuando las características del vehículo lo permitan, una persona debidamente autorizada para conducir tal tipo de vehículo de motor. La persona que estuviere al lado del aprendiz deberá además estar en condiciones físicas y mentales que le permitan actuar o instruir a tal aprendiz y hacerse cargo del vehículo, si ello fuere necesario."

Conforme a las Secs. 3-301(9) (9 L.P.R.A. sec. 721(9)) y 3-302 (9 L.P.R.A. sec. 722(a)) la violación de la transcrita disposición apareja "multa no menor de cinco (5) dólares ni mayor de veinticinco (25) dólares".

La Sec. 5-201 (9 L.P.R.A. sec. 871) prescribe:

*"Sec. 871. Imprudencia o negligencia temeraria*

"(a) Toda persona que condujere un vehículo con voluntario o malicioso desprecio por la seguridad de personas o propiedades será culpable de conducir temerariamente e incurrirá en delito menos grave y convicta que fuere se le castigará con una multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares o cárcel por un término no menor de un mes ni mayor de seis (6) meses, o ambas penas a discreción del Tribunal.

"(b) En caso de una segunda convicción bajo las disposiciones de esta sección, el Secretario revocará a la persona así convicta toda licencia que posea autorizándole a conducir vehículos de motor por un término de tres (3) meses y por cada convicción subsiguiente la revocación será por un término de seis (6) meses."

Copia de esta moción fue enviada por correo ese mismo día al Lcdo. Ramón E. Febus Bernardini. El día siguiente, sin haber oído a dicho abogado, la juez Hon. Delia Lugo Bougal emitió resolución escrita en que declaró con lugar la solicitud del Lcdo. Bonilla Vélez para intervenir como *amicus curiae* "en representación de los perjudicados", según se expresa en la resolución.

Oportunamente el abogado del menor solicitó reconsideración de la mencionada resolución. Ésta fue denegada. También denegó la sala recurrida la solicitud de archivo del caso formulada a base de "falta de jurisdicción", prescripción, y violación del derecho a juicio rápido. Para revisar dichos dictámenes, se instó ante nosotros recurso de *certiorari*. Concedimos término al Procurador General para mostrar causa por la cual no debamos expedir el auto, éste ha comparecido y resolvemos sin ulteriores trámites. Hemos resumido en tres los planteamientos que se hacen en el recurso, los cuales pasamos a considerar, a saber: aplicabilidad del procedimiento especial en relación con menores, prescripción y derecho a juicio rápido del menor, y procedencia de la intervención de un *amicus curiae* en estos procedimientos.

II. *Aplicabilidad del Procedimiento de la Ley de Menores*

Argumenta el peticionario que la Ley Núm. 97 de 23 de junio de 1955 (34 L.P.R.A. secs. 2001 a 2015) que establece procedimientos judiciales especiales para casos de menores, "no es suficientemente clara". Señala que como el menor ya había cumplido diez y ocho años cuando se inició el procedimiento, ya no era un "niño" sujeto a la autoridad de la Sala de Menores.

La citada ley define lo que es un "niño", a los fines de la misma, en su Art. 1 (34 L.P.R.A. sec. 2001) en su inciso (c), así:

(c) "Niño" significará una persona menor de 18 años de edad o una persona que habiendo cumplido 18 años de edad sea llamada a responder por la infracción o tentativa de infracción de

cualquier ley estadual [*sic*] u ordenanza municipal cuando en tal infracción o tentativa de infracción incurrió dicha persona antes de haber cumplido 18 años de edad.

El inciso (a) de ese mismo Art. 1 define el "Tribunal" como "cualquier sala o sección del Tribunal Superior del Tribunal de Primera Instancia". El Art. 2 (34 L.P.R.A. sec. 2002) confiere autoridad al Tribunal "sobre todo asunto relacionado con niños", y dispone que "dos o más jueces de dicho Tribunal serán designados para entender exclusivamente" en los asuntos relacionados con cualquier niño "[q]ue infrinja o haya tratado de infringir cualquier ley estadual [*sic*] u ordenanza municipal". Inciso (c) de dicho artículo. Y el Art. 3 (34 L.P.R.A. sec. 2003) dispone:

El Tribunal conservará su autoridad sobre todo niño sujeto a las disposiciones de las secs. 2001 a 2015 de este título hasta que cumpla la edad de 21 años a menos que el Tribunal, mediante orden al efecto, renuncie a su poder sobre el *menor después de haber cumplido 16 años y antes de que éste cumpla 21 años de edad; Disponiéndose, sin embargo, que cuando un menor que haya cumplido 18 años de edad y se encuentre bajo la supervisión del Tribunal cometa una nueva infracción de la ley se procesará como adulto.*

 Nada hay que añadir. La redacción de estas disposiciones es clara. Es la edad del "niño" en la fecha de la alegada falta cometida lo que determina si le es aplicable el procedimiento relativo a menores establecido en dicha ley. Si, como en este caso, aún no había cumplido diez y ocho años, le eran aplicables las disposiciones de la Ley de Menores no importa que el procedimiento se iniciara después de haber alcanzado esa edad. Claro está que, como tenía más de diez y seis y menos de diez y ocho años de edad en la fecha de la alegada falta, podía el tribunal haber renunciado a su poder bajo la citada ley y disponer que se le juzgue como adulto, (²)

---

(²) Dispone el Art. 4 de dicha Ley, 34 L.P.R.A. sec. 2004:
*"Sec. 2004. Renuncia del Juez para entender en el caso.*
"Cuando se impute a una persona mayor de 16 años de edad y menor

pero no lo hizo. En ese caso, el tribunal conservará su supervisión sobre el menor hasta que éste cumpla 21 años de edad. Véase *Pueblo* v. *Andújar*, 80 D.P.R. 822, 826 (1958).

III. *La Prescripción y el Derecho a Juicio Rápido*

—A—

■ Se argumenta en la petición ante nos que por haberse presentado la querella más de un año después de la fecha de la alegada falta, la acción estaba prescrita tanto desde el punto de vista del Derecho penal como de la acción derivada de culpa o negligencia del Código Civil. No es correcto. No se trata aquí de una acción penal ni de una acción civil en resarcimiento de daños. Se trata de un procedimiento especial *sui generis* bajo la citada Ley Núm. 97, que no contiene plazo prescriptivo alguno.

■ Las disposiciones sobre prescripción de las acciones civiles no son de aplicación al procedimiento de la Ley Núm. 97. El Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, contempla la prescripción por el transcurso de un año de dos tipos generales de acciones: las posesorias y las indemnizatorias. Díez Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 292. Las primeras están claramente fuera del ámbito de este caso. Las segundas, dirigidas a exigir resarcimiento por daños causados por culpa o negligencia, se limitan a acciones exclusivamente civiles de origen y naturaleza extracontractual. Scaevola, *Código Civil*, 1965, T. XXXII, Vol. II, pág. 879.

---

de 18 años de edad la infracción de una ley estatal, el juez, después de investigar el caso y concluir que entender en dicho asunto bajo las disposiciones de las secs. 2001 a 2015 de este título sería contrario al bienestar del menor o de la comunidad, podrá renunciar la jurisdicción del tribunal y darle traslado para que se tramite el caso como si se tratara de un adulto, ante la Sala correspondiente del Tribunal de Primera Instancia. Ninguna resolución u orden dictada por el tribunal, o evidencia aducida en contra del menor ante este tribunal, podrá ser ofrecida ni admitida como medio de prueba en ningún otro caso civil o criminal, o en cualquier otro procedimiento judicial establecido con cualquier fin contra dicho menor."

Si bien las actuaciones y conducta imputadas al menor en el caso de autos podrían dar lugar a una acción en resarcimiento por daños bajo los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142, respectivamente, a la que podría aplicarse el término prescriptivo de un año del citado Art. 1868, no es éste el caso ni el procedimiento para ello. Ya hemos expresado el propósito y el alcance del procedimiento establecido por la Ley Núm. 97 de 1955. No es para obligar al cumplimiento de obligaciones extracontractuales. La persona que pudo ser perjudicada por la conducta del menor no es parte en este procedimiento.

■ La prescripción en el ámbito penal consiste en "la extinción de la responsabilidad penal mediante el transcurso de un período de tiempo, en determinadas condiciones, sin que el delito sea perseguido o sin ser la pena ejecutada. La primera se denomina *prescripción del delito* o *de la acción penal*, la segunda *prescripción de la pena*". Cuello Calón, *Derecho Penal*, 17ma ed., Barcelona, Ed. Bosch, 1975, T. I, Vol. II, pág. 758.

El vigente Código Penal dispone en su Art. 78 (33 L.P.R.A. sec. 3412) que "la acción penal" prescribirá a los tres años en los delitos graves y al año en los delitos menos graves, salvo algunas excepciones que no vienen al caso. Como hemos visto al exponer los hechos, las disposiciones de la Ley de Vehículos y Tránsito, cuya violación se imputó al menor que aquí nos concierne, son castigables como delitos menos graves y como tales prescriben al año.

Aunque hay cierta tangencia entre el procedimiento especial de la Ley Núm. 97, que aquí consideramos, y las disposiciones penales mencionadas, éstas no son aplicables a dicho procedimiento, excepto para tipificar ciertos casos de conducta antisocial que, si un adulto incurre en ella, sería constitutiva de delito. Al adulto que incurra en delito se le impone como penalidad la dispuesta para dicho delito. Al menor que incurra en falta que equivaldría a un delito si cometida por

un adulto, no se le impone penalidad alguna bajo el procedimiento de la Ley Núm. 97. Tampoco se le considera convicto. Si se le halla incurso en falta, se disponen medidas para reorientarlo, reajustarlo a las normas de buena convivencia, educarlo para que no se convierta en un adulto criminal. Al definir el Derecho penal dice Jiménez de Asúa:

[Este es el] *Conjunto de normas y disposiciones jurídicas que regulan el ejercicio del poder sancionador y preventivo del Estado, estableciendo el concepto del delito como presupuesto de la acción estatal, así como la responsabilidad del sujeto activo, y asociando a la infracción de la norma una pena finalista o una medida aseguradora.*

De propósito hemos dejado fuera de esta definición las medidas educativas que se refieren a los menores, porque éstos salieron para siempre del Derecho penal y las normas que se les aplican no tienen como base el delito, sino la necesidad de resocializar a los niños y adolescentes, a fin de que no se transformen en criminales adultos. Pero todo esto es ajeno al Derecho punitivo. Jiménez de Asúa, *Tratado de Derecho Penal*, 2da ed., Buenos Aires, Ed. Losada, S.A., 1956, T. I, pág. 31.

La propia Ley Núm. 97 es clara al distinguir sus procedimientos de las normas aplicables en el Derecho penal. Dice en su Art. 11 (34 L.P.R.A. sec. 2011):

Ningún procedimiento, orden o resolución del Juez conforme a las disposiciones de las secs. 2001 a 2015 de este título con relación a un niño se considerará de naturaleza criminal ni aparejará la pérdida de los derechos civiles resultantes de una convicción ni se considerará a dicho niño un criminal o un convicto en virtud de dicha orden o resolución ni se le acusará o condenará en el Tribunal excepto en el caso dispuesto por la sec. 2004 de este título. Ningún procedimiento, orden o resolución del Juez ni la evidencia aducida durante la ventilación del asunto constituirá impedimento para cualquier solicitud de empleo o nombramiento para un puesto o cargo dentro del servicio público. [3]

---

[3] Véase el Art. 4 (34 L.P.R.A. sec. 2004) en el escolio 2, *supra*.

La citada Ley Núm. 97 fue aprobada "en el ejercicio por el Estado de su facultad y autoridad como *parens patriae*". Art. 16 (34 L.P.R.A. sec. 2015). Su filosofía es tutelar y reeducativa. Informe sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico, por la Comisión de Menores y Relaciones de Familia, 1976, págs. 26–27. Su propósito es ". . . proveer a los niños abandonados o desajustados, preferiblemente en sus hogares, la atención y orientación necesarias para su bienestar, en armonía con el interés público; mantener y fortalecer las relaciones de dichos niños con sus familiares; privar provisional o permanentemente a los padres de la custodia de un niño solamente cuando el bienestar de éste o el interés público lo justifiquen, y brindarle, en la medida que sea posible, la orientación y atención que debió recibir en su hogar". Exposición de Motivos de la Ley Núm. 97, último párrafo. 34 L.P.R.A., anotación a la sec. 2001.

Hemos reiterado en nuestra jurisprudencia la norma de separación entre los procedimientos relativos a menores y los procesos penales aplicables a adultos, y hemos señalado antes que aquéllos no se considerarán de naturaleza criminal, sino que gozan de una naturaleza especial *sui generis. R. A. M.* v. *Tribunal Superior,* 102 D.P.R. 270, 273 (1974); *Pueblo* v. *Tribunal Superior,* 100 D.P.R. 80, 82–84 (1971); *ELA en Interés R. M. R.,* 83 D.P.R. 242, 248 (1961).

Una comparación de los principios que animan la prescripción en el Derecho penal con los que nutren nuestra Ley de Menores revela que los primeros no son aplicables a los procedimientos que establece tal ley. Ello no significa, sin embargo, que los procedimientos contra menores puedan incoarse en cualquier momento. Los propósitos que animan nuestra Ley de Menores exigen su iniciación en su término razonable. Este requisito de razonabilidad es parte indispensable del "trato justo" debido al menor. Ya desde *ELA en Interés R. M. R.,* supra, págs. 247–248, hubimos de señalar que en estos procedimientos el "niño" puede reclamar aque-

llas garantías constitucionales que le aseguren "un trato justo" y un debido proceso de ley. (⁴) En *United States* v. *Marion*, 404 U.S. 307, 322–23 (1971), el Tribunal Supremo federal reconoció que los estatutos de prescripción, además de otros propósitos, garantizan un juicio justo a un individuo.

—B—

El planteamiento que se nos hace en cuanto al derecho a juicio rápido está centrado en el transcurso de más de un año desde la fecha de la alegada falta hasta que se inició el procedimiento.

Hasta ahora no habíamos tenido ocasión de pronunciarnos sobre la aplicabilidad del derecho a juicio rápido en los procedimientos en que se investiga y resuelve sobre la conducta de menores.

■ Nos hemos expresado específicamente en torno a la aplicación en los casos de menores de la presunción de inocencia y su concomitante garantía de exigir prueba más allá de duda razonable, *R. A. M.* v. *Tribunal Superior*, supra, y la garantía contra la autoincriminación, *Pueblo* v. *Figueroa González*, 95 D.P.R. 98, 102 (1967). En cuanto a la jurisprudencia del Tribunal Supremo federal sobre las garantías constitucionales aplicables véanse *Haley* v. *Ohio*, 332 U.S. 596 (1948); *Gallegos* v. *Colorado*, 370 U.S. 49 (1962); *Kent* v. *United States*, 383 U.S. 541 (1966); *In re Gault*, 387 U.S. 1 (1966); *In re Winship*, 397 U.S. 358 (1970); *McKeiver* v. *Pennsylvania*, 403 U.S. 528 (1971); *Ivan* v. *City of New York*, 407 U.S. 203 (1972); *Breed* v. *Jones*, 421 U.S. 519 (1975), y *Swisher* v. *Brady*, 435 U.S. 913 (1978). No hemos

---

(⁴) Igual criterio ha empleado el Tribunal Supremo federal: "We do not mean . . . to indicate that the hearing to be held must conform with all the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment". *Kent* v. *United States*, 383 U.S. 541, 562 (1966), *In re Gault*, 387 U.S. 1, 30 (1966); *In re Winship*, 397 U.S. 358, 359 (1970).

hallado caso alguno de dicho Tribunal que específicamente se pronuncie sobre el derecho a juicio rápido en asuntos de menores.([5])

En las causas criminales, el derecho a juicio rápido no cobra vigencia hasta que el imputado de delito es detenido o está sujeto a responder. *Pueblo* v. *Opio Opio*, 104 D.P.R. 165, 169 (1975); *Hernández Pacheco* v. *Flores Rodríguez*, 105 D.P.R. 173, 177–178 (1976); *cf. Pueblo* v. *Padilla Arroyo*, 104 D.P.R. 103, 107 (1975). Es con ello que se inicia el procedimiento acusatorio y desde entonces debe garantizarse al acusado que será procesado sin dilación innecesaria o injustificada. El procedimiento no se inicia con la comisión del delito. Allí comienza el término prescriptivo, si lo hubiere, para el delito en cuestión. La fijación de términos prescriptivos es compatible con el derecho a juicio rápido, pero no es parte de ese derecho. No es preciso resolver en este caso si este derecho tiene aplicación a estos procedimientos. En el caso de autos la querella se formuló ante el Tribunal Superior, Sala de Menores de Ponce, el 16 de octubre de 1978. La vista investigativa se celebró el 25 de octubre. Desde entonces se han planteado y resuelto las cuestiones que han motivado el recurso que aquí resolvemos. No existe un problema de juicio rápido ni necesidad de expresarnos sobre su aplicación.

IV. *Intervención de un Amicus Curiae*

No hemos tenido ocasión de expresarnos antes y señalar pautas sobre la figura del *amicus curiae* y su intervención en los procedimientos judiciales. En la práctica, la comparecencia de un *amicus curiae* ha sido casi exclusivamente en la etapa apelativa o revisora ante nos. Su intervención en un procedimiento en primera instancia puede ser deseable en algunos casos, pero debe ser la excepción y no la

---

([5]) Véanse: *Piland* v. *Clark County Juvenile Court Services*, 457 P.2d 523 (1969), y el Informe sometido por la Comisión de Menores y Relaciones de Familia, *op. cit.*, págs. 182–184.

regla, sobre todo si ha de participar en la gestión de ofrecimiento y aquilatación de pruebas. [6]

Los orígenes de la figura del *amicus curiae* son oscuros, pero era conocida en el Derecho romano y fue usada temprano en el Derecho común anglosajón. Krislov, *The Amicus Curiae Brief: From Friendship to Advocacy*, 72 Yale L.J. 694 (1963); Covey, *Amicus Curiae: Friend of the Court*, 9 De Paul L. Rev. 30, 33-34 (1959). Originalmente se consideró al *amicus curiae* como la personificación de la neutralidad, un "amigo de la corte" o funcionario del tribunal que brindaba a éste su conocimiento sobre algún punto de Derecho o información sobre algún hecho, sin tener interés en la causa que se llevaba ante el tribunal. Krislov, *supra*, pág. 694. Con el transcurso del tiempo su función se fue ampliando en los procesos adversativos, despojándose de su neutralidad hasta el punto en que hoy en día es completamente aceptable la comparecencia de un *amicus curiae* en defensa activa de intereses o causas tanto públicas como privadas. Krislov, *supra*, págs. 694, 696, 697. Claro está, en ningún momento se le ha considerado parte formal en el caso, y no puede controlar el curso de la litigación. Beckwith & Sobernheim, *Amicus Curiae—Minister of Justice*, 17 Fordham L. Rev. 38, 50, 51 (1948); Covey, *supra*, págs. 30-31; 1B *Moore's Federal Practice*, sec. 0.411 [6].

Dada su flexibilidad, los tribunales en otras jurisdicciones han evitado definir con precisión las funciones del *amicus*

---

[6] No es menester una exégesis sobre el planteamiento del peticionario de que el rechazo de la intervención del *amicus curiae* por la juez Pardo de Vázquez constituía cosa juzgada. El resultado a que llegamos a base de las características del *amicus curiae* y del procedimiento bajo la Ley Núm. 97 de 1955 lo hace innecesario. Valga señalar, sin embargo, que la primera solicitud se hizo en la etapa investigativa del caso, y no pudo tener, por tanto, el alcance de una decisión final en los méritos. Véase *Rivera* v. *Insurance Co. of P.R.*, 103 D.P.R. 91, 94 (1974). Tampoco puede afirmarse que la decisión hecha en esa primera etapa constituyera la ley del caso, obligatoria en la etapa adjudicativa. Como veremos, la comparecencia de un *amicus curiae* no se autoriza como un derecho. Es un privilegio sujeto siempre a la sana discreción del juez.

*curiae* y las circunstancias bajo las cuales puede ser retenido. Krislov, *supra*, pág. 694. Se nota en la jurisprudencia norte-americana una tendencia a ampliar sus facultades cuando éste interviene en casos de interés público o con el propósito de vindicar la dignidad del tribunal. Así, se ha ordenado a un *amicus curiae* realizar descubrimiento de prueba, *Northside Independent Sch. Dist.* v. *Texas Ed. Agcy.*, 410 F.Supp. 360 (1975); iniciar procedimientos adecuados y someter alega-ciones y evidencia, *Faubus* v. *United States*, 254 F.2d 797 (1958); ([7]) participar en la investigación de fraude al tribu-nal, *Universal Oil Co.* v. *Root Rfg. Co.*, 328 U.S. 575 (1946); realizar una investigación y llevar a cabo una vista en un procedimiento de desacato, *In re Mortimer*, 358 N.E.2d 92 (1976), de Illinois. La participación de un *amicus curiae* también ha sido autorizada en ciertos casos de relaciones de familia y delincuencia juvenil. Beckwith & Sobernheim, *supra*, pág. 46; *Krislov*, supra, pág. 717.

▮ La jurisprudencia norteamericana se ha pronun-ciado en el sentido de que el nombramiento de un *amicus cu-riae* cae totalmente bajo la discreción del tribunal, por lo que la determinación de nombrarlo o la negativa a hacerlo no es-tán sujetas a revisión. *The Claveresk*, 264 F. 276 (1920); *Clark* v. *Sandusky*, 205 F.2d 915 (1953); *Boston & Provi-dence Railroad Stock. Develop. Gr.* v. *Smith*, 333 F.2d 651 (1964). Dicha jurisprudencia, sin embargo, no nos obliga. *Pérez Aldarondo* v. *Tribunal Superior*, 102 D.P.R. 1, 10 (1974). Tampoco la adoptamos. El uso de discreción en ins-tancia, aunque de ordinario respetable, no nos impone una norma de abstención inflexible. Véanse, *Fine Art Wallpaper* v. *Wolff*, 102 D.P.R. 451, 454 (1974); *Don Quixote Hotel* v. *Tribunal Superior*, 100 D.P.R. 19, 29 (1971); *Díaz* v. *Tri-bunal Superior*, 93 D.P.R. 79 (1966); *Ortiz Rivera* v. *Agosti-ni*, 92 D.P.R. 187 (1965). El nombramiento de un *amicus*

---

([7]) Tanto *Northside* como *Faubus* eran litigios por segregación racial y los *amici curiae* eran abogados del gobierno federal.

*curiae* en instancia es discrecional, pero no irrevisable. "Ningún Tribunal de Justicia posee discreción absoluta." *Pueblo* v. *Sánchez González*, 90 D.P.R. 197, 200 (1964).

 Ninguna persona o entidad, y ningún abogado, tiene derecho a intervenir como *amicus curiae* en un litigio. Su autorización para hacerlo debe responder, más que a su interés, a la necesidad del tribunal y a su propósito de estar mejor informado para hacer la más cumplida justicia. La obtención de esa ayuda puede canalizarse mediante solicitud hecha al tribunal o por iniciativa de éste, tomando en consideración, entre otros factores, el interés público del asunto bajo consideración, lo novel de las cuestiones planteadas, el alcance de la adjudicación que haya de hacerse en cuanto a terceros que no son parte en el litigio, las cuestiones de política pública que puedan estar planteadas, la magnitud de los derechos que puedan estar en juego, etc. No puede haber criterios fijos limitativos ni particularizadores de los factores a tomarse en consideración.

 No debe admitirse un *amicus curiae* para aportar elementos de juicio accesibles al tribunal mediante los mecanismos procesales ordinarios, como son el nombramiento de comisionados especiales, de peritos del tribunal, y las reglas sobre descubrimiento de prueba. Tampoco debe darse intervención al *amicus curiae* para que se convierta en una parte en el litigio. El amigo de la corte puede ser el amigo de una causa, pero ante todo debe ser el amigo y servidor de la causa de la justicia.

 En el caso ante nuestra consideración, la naturaleza misma del procedimiento debió aconsejar más cautela al considerarse si debía nombrarse un *amicus curiae*. Si bien el procedimiento de la Ley Núm. 97 de 1955 no es de naturaleza criminal, como antes señaláramos, tiene tangencia con el Derecho penal porque persigue una determinación correctiva de una condición que puede ser indeseable en un menor. La intervención de un *amicus curiae* en ese procedimiento, de

permitirse, debe serlo para ayudar al logro de los propósitos de la Ley. No debe permitirse un *amicus curiae* cuya primera lealtad, evidenciada en los términos de su moción, responde a la vindicación de unos supuestos derechos constitucionales y de propiedad de alegadas partes perjudicadas.[8] En nada ayuda al propósito de la Ley Núm. 97 introducir en el procedimiento por ella establecido la descartada figura del fiscal especial privado.[9] Existen otros procedimientos ordinarios de ley que ofrecen amplia oportunidad a las alegadas "partes perjudicadas", al decir de la moción sobre *amicus curiae*, para que puedan vindicar los derechos que les puedan corresponder.

V. *Atendidas las precedentes consideraciones, se expedirá el auto de certiorari solicitado al único fin de revocar la resolución que nombró un amicus curiae para intervenir en los procedimientos pendientes en este caso, y se devuelve el caso a instancia para procedimientos ulteriores consistentes con esta opinión.*

---

[8] Véase el primer párrafo de la moción, transcrito *supra*, pág. 118.

[9] La Ley Núm. 51 de 28 de abril de 1930 (3 L.P.R.A. secs. 102 y 102a) permitía el nombramiento de un abogado como *fiscal especial*, hecho por el Secretario de Justicia a instancias de dicho abogado, para intervenir en determinada causa criminal pendiente en el Tribunal de Distrito. Dicha ley fue expresamente derogada por la Núm. 146 de 23 de julio de 1974.